## County of McKean v. W. A. Young, Commissioner of the County of McKean, Appellant.

*County commissioners—Compensation—Allowance for expenses—Hotel bills—Railroad fare—Attendance on state convention of county commissioners.*

The obligation of a county to compensate its officers is wholly statutory. The compensation of county commissioners is fixed by the Acts of May 7, 1889, P. L. 109, and May 13, 1889, P. L. 200, at a per diem compensation for the time actually and necessarily employed in the discharge of the duties of their office, allowance being made for traveling expenses necessarily incurred in the discharge of official duties. Hence it follows that commissioners were properly surcharged with hotel bills and railroad fares on attendance on a state convention of county commissioners. Attendance on such convention may be of marked public advantage but is not involved in the cause of business growing out of the management of county affairs and is not directly provided for by statute. No allowance is made by law for hotel bills of commissioners even when engaged on strictly county business, only the bare cost of transportation is contemplated and this not as between the commissioner's home and his office.

VOL. XI—31

Argued Feb. 17, 1899. Appeal, No. 23, Feb T., 1899, by defendant, from judgment of C. P. McKean Co., June T., 1898, No. 168, in favor of plaintiff on issue tried before the court without a jury. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by SMITH, J.

Issued tried without a jury. Before MORRISON, J.

It appears from the record that the auditors in McKean county stated an account against W. A. Young, one of the commissioners of McKean county, surcharging him with $87.27. An issue was framed in the form of the county of McKean as plaintiff and W. A. Young, commissioner, as defendant, to try whether the said defendant is indebted to the said plaintiff, and if so how much, or whether the said plaintiff is indebted to the defendant, and if so how much, in which action the county auditor's report filed at No. 60, June term, 1898, and the appeal, specifications of error, filed by defendant herein were directed to stand as an answer, and the case was put down at issue and the defendant pleading the general issue and set-off.

The court below filed the following opinion:

### FINDINGS OF FACT.

1. The defendant, W. A. Young, is one of the county commissioners of McKean county and was such for the year 1897.

2. The county auditors in their settlement of the defendant's account for the year 1897 refused to allow him credit for sundry hotel bills amounting in the aggregate to $39.90, which he paid out while engaged in the transaction of county business, while away from the county seat where he resided, and surcharged him with said amount.

The auditors also refused to allow him credit for railroad fare to and from Gettysburg attending county commissioners' convention, October 5, 6, 7, 8 and 9, amounting to $17.31. Also compensation at $3.50 per day while attending said convention, amounting to $17.50. Also, for September 22 and 23, and October 20, at $3.50 per day, amounting to $10.50. And also one third of another hotel bill, amounting to $2.06, total surcharge being $87.27.

3. I find that on October 5 and 9, and September 22 and 23

and October 20, the defendant was in the county commissioners' office, at Smethport, engaged in the transaction of the routine business, or at least a portion of each of said days, and it was error to surcharge for said days.

### CONCLUSIONS OF LAW.

[1. We surcharge the defendant for hotel bills the sum of $41.96.] [1]

[2. The county commissioners' conventions are not held in pursuance of any law authorizing the defendant to charge for his time in attending such convention, and we therefore surcharge him $10.50 for three days attending convention.] [2]

[3. We also surcharge the defendant $17.31 for railroad fare attending convention at Gettysburg.] [3]

We refuse to surcharge the defendant for October 5, 9 and 20, and September 22 and 23.

### OPINION.

The questions raised for decision in this case are the following :'

1. Is the defendant entitled to credit for his personal expenses paid for meals and lodging at hotels while necessarily away from home and the commissioners' office transacting the business of the county?

2. Is the defendant entitled to credit for hotel bills paid while attending commissioners' convention at Gettysburg?

3. Is the defendant entitled to $3.50 per day for his time while attending said convention?

In Mansel v. Nicely, 175 Pa. 367, the question of county commissioners' compensation per day and the expenses which they may charge while absent from their office in the discharge of their official duties was considered. The act of May 7, 1889, allowed the county commissioners to be paid out of the county funds the sum of $3.50 each, for each and every day actually and necessarily employed in the discharge of the duties of their office. This act was intended to cover all the charges and expenses of the county commissioners and to include their traveling expenses. But on May 13, 1889, P. L. 200, the legislature passed another act which provides that "from and after the passage of this act directors of the poor and county

commissioners of this commonwealth shall be allowed their traveling expenses necessarily incurred in the discharge of their official duties," etc.

On page 376, Mr. Justice FELL, speaking for the court, says : " All general laws upon the subject were repealed by the act of May 7, 1889. Two acts relating to the same subject were passed in the same year. The act of May 7 fixes the compensation of county commissioners at $3.50 per day, and provides : That the pay allowed by this act shall be in lieu of all other compensation and charges for the individual services and expenses of said commissioners. The act of May 13th allows county commissioners their traveling expenses necessarily incurred in the discharge of their official duties. It will be observed that the first act allows nothing for individual services and expenses, and the second act allows traveling expenses incurred in the discharge of official duties. For the purposes of construction, as these acts relate to kindred subjects and were passed within a week of each other, the entire scope of the legislation should be considered. The second act does not repeal any part of the first, but supplies something for which it had not provided. The first act took away the right of all allowance for individual expenses ; the second conferred the right to traveling expenses. It supplied an omission in the first act. An implied repeal is a question of intention, and the presumption against the intention to repeal is strengthened by the fact that both acts were under consideration by the legislature at the same time. . . .

" Whenever the official duties of the commissioner call him from his home or his office to different parts of the county, or it may be of the state, his traveling expenses are incurred in the performance of an official duty, and he is entitled to an allowance for them under the act of May 13. Such an expense, we think, is the only one within the meaning of the act. The purpose of the legislation to exclude all individual expenses and to allow only for traveling expenses incurred in the discharge of an official duty seems to be clear."

Now, when we turn to page 371 and find that the court below held that all the commissioner is entitled to charge in addition to his per diem is the actual amount of traveling expenses, and that it would not cover his meals at the hotels, we are forced

to the conclusion that this case does rule [that the commissioner cannot be allowed credit for hotel bills while away from his home and office on official business.]

We are free to say that without the Nicely case we would have reached a different conclusion as to the acts of May 7 and 13, 1889. Our own conclusion would have been that when the legislature provided that the commissioner should be paid $3.50 per day and his traveling expenses, incurred in the discharge of official duties, transportation, meals and lodging would have been included. If I should employ a man to visit New York to transact business for me, agreeing to pay him $10.00 per day and traveling expenses, I think the law would compel me to pay his transportation and proper hotel bills. But while this exact point was not raised, discussed and decided specifically in the Nicely case, yet rightly interpreted, the decision of the lower court and of the Supreme Court seems to exclude meals and lodgings from traveling expenses.

And now, to wit: January 18, 1899, upon due consideration the exceptions are all dismissed, except so much of the fifth and sixth exceptions as complain of the imposition of costs upon the defendant, which are sustained, because the judgment or decision is more favorable to the appellant than the report of the auditors, and therefore, let judgment be entered against the defendant as per decision filed December 12, 1898, with costs against the county of McKean : Act of April 14, 1838, P. L. 457, sec. 11.

Defendant appealed.

*Errors assigned* among others were (1–3) to the first, second and third conclusions of law, reciting same. (4) In holding as a matter of law "that the commissioner cannot be allowed credit for hotel bills while away from his home and office on official business." (10) In directing judgment to be entered against the appellant by the order of court of January 18, 1899, reciting the same. (11) In directing judgment to be entered against defendant for the sum of $69.77.

*J. W. Bouton* and *F. D. Gallup*, for appellant.—This question involves the construction of two acts of assembly, viz : Act of May 7, 1889, P. L. 109, and Act of May 13, 1889, P. L. 200, sec. 1.

The act of May 13, 1889, supra, gave the commissioners traveling expenses incurred in the discharge of their official duties, so the question for consideration is, What are traveling expenses? Our contention is that the term "traveling expenses," within the meaning of the act of May 13, supra, includes not only actual cost of transportation, but all other expenses necessarily incurred by the commissioner from the time he leaves the office on the business of the county until he returns, and necessarily includes meals en route and necessary hotel accommodations at the place away from the office where it is necessary for the commissioner to go to transact the business of the county devolving on him by virtue of his office. Any other construction would exclude a county commissioner from being reimbursed for money paid for horse feed while driving his own horse in going from place to place on county business, and would also mean that a county commissioner receiving $3.50 per day must pay out of his own pocket from $2.00 to $3.00 per day for hotel bills while away from his office on county business, thus leaving him for his services the paltry sum of from fifty cents to $1.50 per day. It also means that the business of the county which can for the interest of the taxpayers best be done by the commissioners in person, will be delegated to a great extent to others, who will be paid for their time and expenses by the county, while the commissioners remain in their office and draw their pay in full.

Two questions of importance are raised by the assignments of error in Mansel *v.* Nicely, 175 Pa. 367. One relates to the right of the appellee, a county commissioner of Lycoming county, to the allowance of $3.50 per day for each of the 306 days on which he was in attendance at his office, and the other to the allowance of the daily expenses of travel from his home to his office. Nothing else was discussed in that case and nothing else was considered or decided.

His traveling expenses are incurred in the performance of an official duty, and he is entitled to an allowance for them under the act of May 13.

"Traveling expenses necessarily incurred," used in the act of May 13, 1889, means such sums as the officer is necessarily obliged to pay out for his transportation and board while away from his office engaged in the business of the county.

The case of Reuben Withers v. John Withers, 8 Peters, 355, decided by the Supreme Court of the United States we think rules this question. In that case plaintiff and defendant were partners engaged in mercantile business in the town of Alexandria. By the articles of copartnership each party was to pay his own individual expenses. The defendant claimed for hotel bills incurred while in New York on firm business. The action was a bill for an accounting.

*Rufus B. Stone*, with him *Thomas F. Richmond*, county solicitor, for appellee.—1. The sole statute in force prescribing the compensation of commissioners is the Act of May 7, 1889, P. L. 109, sec. 1, and it provides a compensation per diem restricted to "each and every day actually and necessarily employed in the discharge of the duties of their office." The test question is therefore whether attendance at such state convention is an official duty of a commissioner. Manifestly it is not: Dillon on Municipal Corporations (2d ed. 1873), sec. 172; Bussier v. Pray, 7 S. & R. 447; Kilpatrick v. Bridge Co., 49 Pa. 118.

Moral obligations on this head are nothing to the purpose; we deal with legal rights: Com. v. Mann, 5 W. & S. 403; Barker v. City of Pittsburg, 4 Pa. 49.

If wrong we are not responsible for its effects upon the rights of parties; another power must change that which is otherwise fixed and settled: Smith v. Phila., 2 Pars. 293.

In County v. Bridenhart, 16 Pa. 458, it was observed that commissioners may be surcharged for rent paid for temporary residence of sheriff, and in Merkel v. Co., 81* Pa. 505, it was held that orders drawn by the directors of the poor for "donations" for benevolent purposes were properly disallowed by the county auditors.

Public officers should be held to a strict and rigid accountability, and in no case should charge for services exceeding the compensation allowed by law be sanctioned or tolerated: Godshalk v. Northampton Co., 71 Pa. 324.

It is true that the commissioners possess an authority commensurate with their public trusts and duties, Van Kirk v. Clark, 16 S. & R. 286, but such trusts and duties "are fixed by law:" Mansel v. Nicely, 175 Pa. 367.

2. By the Act of May 13, 1889, P. L. 200, "traveling expenses necessarily incurred in the discharge of their official duties" were distinguished and excepted. This act was passed only a week later than the one first above mentioned, which excludes all "individual expenses." Both acts were pending at the same time. Hence if there had been no purpose to except traveling expenses distinguished from hotel bills, the end would in due course of legislation have been reached by simply striking out of the first act the word "expenses." The first act was not amended and the second is therefore in the nature of a proviso. The word "traveling" if it has any significance, qualifies, defines and limits the character of the expenses excepted, and restricts them to cost of transportation. It means expenses peculiarly incident to travel. Meals and lodging are not. The word "mileage" is defined by the lexicographer as "fees paid for travel by the mile." Hence it is not synonymous with our interpretation of the term "traveling expenses," and the suggestion of counsel for appellant that it would have been used to express such interpretation is not borne out. Nor would the term "railroad fare" be sufficiently comprehensive, for travel within the county for the inspection of bridges and public work might often be by the highway.

The first act took away the right of allowance for all individual expenses; the second conferred the right to traveling expenses: Mansel v. Nicely, 175 Pa. 367.

OPINION BY SMITH, J., October 9, 1899:

The items of surcharge here complained of consist of hotel bills, attendance on a state convention of county commissioners held at Gettysburg, and railroad fare on such attendance. The controversy is with respect to the liability of the county for these items.

The obligation of the county to compensate its officers is wholly statutory. Unless it is created by statute, either in express terms or by necessary implication, it does not exist. "An officer derives equally his authority and his compensation from the law, and when both are defined in the law, he can no more enlarge the one than the other:" Brown v. Com., 2 R. 40. "Where a positive law prescribes the manner and nature of the payment to be made to an officer, the directions of the

law are and ought to be the only rule: " Brown v. Com., 2
R. 40; Albright v. County, 106 Pa. 582.   Hence, to determine
the question arising here, we have only to ascertain the authority
of the county commissioners in the premises, and the compensa-
tion fixed by law for its exercise.

A county is a quasi corporation, and its corporate powers
are to be exercised by the commissioners: Kittanning Academy
v. Brown, 41 Pa. 269; Act of April 15, 1834, P. L. 537, secs. 3, 4.
Except on a few points, the powers of the commissioners are not
expressly or directly defined by statute.   But, as public agents
of the county, exercising its corporate powers, their authority
must necessarily be commensurate with the scope of their du-
ties in the premises: Van Kirk v. Clark, 16 S. & R. 286.   We
cannot, however, regard their duties as requiring their attend-
ance on a state convention of county commissioners.   It may
be conceded that a conference of the county commissioners of
the state may prove of marked advantage, from an exchange
of views, a comparison of experiences, of methods, and of
results.   But it is not involved in the course of business grow-
ing out of the management of county affairs, and is not directly
provided for by statute.   Commissioners are selected, presumably,
in view of their ability to perform the duties pertaining to the
office, and in the absence of legislative authority they cannot
be permitted to further qualify themselves at the expense of
the county.   The surcharge for expenses incurred in attend-
ing the convention is therefore sustained.

The compensation of county commissioners is fixed by the
Acts of May 7, 1889, P. L. 109, and May 13, 1889, P. L. 200.   The
former provides a per diem compensation of $3.50 for the time
"actually and necessarily employed in the discharge of the
duties of their office," with a proviso that this "shall be in lieu
of all other compensation and charges for the individual ser-
vices and expenses of said commissioners."   The latter act
provides that, in the absence of any local law on the subject,
commissioners "shall be allowed their traveling expenses nec-
essarily incurred in the discharge of their official duties."   In
Mansel v. Nicely, 175 Pa. 367, it was held that this applied
only to traveling expenses incurred by a commissioner "when
his official duties call him from his home or his office to differ-
ent parts of the county, or it may be of the state," and did not

include the expense incurred in going from his home to his office, and returning.

The hotel bills, though incurred in the transaction of county business, cannot be regarded as part of the traveling expenses for which the statute provides. A charge for board, while transacting county business at the county seat, is not a "traveling expense" within the meaning of the act, and a charge for board while transacting business elsewhere stands on no different footing. We regard the statute as providing only for the cost of transportation; the cost of subsistence, wherever incurred, is provided for by salary or a per diem compensation. The scale of living is peculiarly a personal matter, and varies so largely, with the tastes and habits of individuals, that a satisfactory standard cannot well be established. The law therefore leaves each to fix it at his own discretion and at his own expense.

The balance found by the auditors, in favor of the county, and against the appellant, was $49.77. An item, however, of $17.50, surcharged by the auditors, was allowed by the court, reducing the balance to $32.27, and the judgment should be for this amount. Thus modified, the judgment is affirmed.